NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CALIFORNIA CASUALTY AND FIRE INSURANCE COMPANY,

     Plaintiff,

v.

TRACY MONTEZ, LEXIE MONTEZ, CHRISTIAN PEREZ, AND TRI-STATE LUXURY RENTALS LLC (interested party defendant), and ABC CORP (1 through 3),

     Defendants.

No. 2:22-cv-02941 (EP) (JBC)

OPINION

**PADIN, District Judge.**

Plaintiff, an insurance company, seeks a declaration that it is not obligated to provide coverage for a car accident ("Collision") involving a rental car that was rented by the insured's daughter, and driven by an uninsured, unlicensed individual. D.E. 1 ("Complaint" or "Compl."). Presently before the Court is Plaintiff's motion for summary judgment against all Defendants, D.E. 26-2 ("SJ Mot."), Plaintiff's motion for default judgment against Defendant Tri-State Luxury Rentals LLC ("Tri-State"), D.E. 28-2 ("Default Mot."), and Defendants Tracy and Lexie Montez's ("Montez Defendants") cross-motion for summary judgment, D.E. 29-4 ("Montez Mot."). The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons below, Plaintiff's motions for summary and default judgment will be **GRANTED** and the Montez Defendants' cross-motion will be **DENIED**.

## I.   BACKGROUND[1]

### A.  The Parties

Plaintiff California Casualty and Fire Insurance Company ("California Casualty") issued a personal automobile insurance policy to the Montez Defendants' parents.  D.E. 26-3, Joint Statement of Undisputed Facts ("Facts") ¶¶ 1, 5.  Defendant Lexie Montez ("Lexie" or "Renter") rented the car involved in the Collision from Tri-State.  *Id.* ¶¶ 7–9.  At the time of the Collision, Defendant Christian Perez ("Perez" or "Driver") was driving the rental car and Defendant Tracy Montez ("Tracy" or "Passenger") was the passenger.  *Id.* ¶¶ 10–11.

### B.  Factual Background

#### 1.  The Rental Agreement

On August 13, 2021, Renter signed an agreement ("Rental Agreement") with Tri-State to rent a Lamborghini from Tri-State.  Facts ¶¶ 7–8.  The Rental Agreement prohibits the Lamborghini from being operated or used by "anyone who is not an Authorized Driver."  D.E. 26-5 at 37–41 (Ex. B, "Rental Agreement"), at 39–40 (noting that violation of this prohibition constitutes a material breach of Rental Agreement).  Authorized Driver is defined as "the renter and any additional driver listed by [Tri-State] on th[e Rental] Agreement, provided that each person has a valid operator's license for the type of vehicle rented and is at least 21 years of age."  *Id.* at 39.  The only Authorized Driver was Renter.  *Id.* at 38–41.

#### 2.  The Collision

On or around August 13, 2021, Renter drove the Lamborghini to New York City to meet up with Passenger (Renter's sister) and Driver (Passenger's boyfriend).  SJ Mot. at 5.  Shortly

---

[1] Unless otherwise indicated, the facts in this section mainly derive from the Complaint, Joint Statement of Undisputed Facts of California Casualty (and the exhibits referenced therein), and any other undisputed allegations in California Casualty's motions.

thereafter, Renter permitted Driver to take the Lamborghini for a ride with Passenger.  *Id.*  Within minutes, the Lamborghini crashed into a tree.  Facts ¶ 9.  The Lamborghini was totaled.  *Id.* ¶ 12; *see also* D.E. 26-5 at 75–81 (Ex. E), at 78.

At the time of the Collision, Driver was operating the Lamborghini and Passenger was the only other occupant.  Facts ¶¶ 10–11.  Driver did not possess a driver's license.  SJ Mot. at 12. Passenger turned 20 years old on the day of the Collision.  *Id.* at 22.

  *3. The Policy*

California Casualty had issued a personal automobile policy ("Policy") to the Montez Defendants' parents, Jorge and Silvia Montez ("Named Insureds"), with whom the Montez Defendants resided.  D.E. 26-5 at 1–36 (Ex. A, "Policy"); Facts ¶¶ 1, 5–6.  The Policy was in effect at the time of the Collision.  Policy at 6.  The Policy provides liability insurance and collision insurance pursuant to the "liability coverage" provision ("Liability Provision") and "coverage for damage to your auto" provision ("Collision Provision"), respectively.  Facts ¶ 3.

Under the Policy, "family member" is defined as, in pertinent part, "a person related to you by blood, marriage or adoption who is a resident of your household."  Policy at 24.  "[Y]our covered auto" is defined as

> 1. Any vehicle shown in the Declarations.
> 2. A "newly acquired auto."
> 3. Any "trailer" [the Named Insureds] own.
> 4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
> > a. Breakdown;
> > b. Repair;
> > c. Servicing;
> > d. Loss; or
> > e. Destruction.
> This [Fourth] Provision does not apply to [the Collision Provision.]

*Id.*  "Newly acquired auto" is defined as

> Any of the following types of vehicles [the Named Insureds]
> become the owner[s] of during the policy period:
>> a. A private passenger auto; or
>> b. A pickup or van, for which no other insurance policy
>> provides coverage, that:
>>> (1) Has a Gross Vehicle Weight Rating of 10,000 lbs.
>>> or less; and
>>> (2) Is not used for the delivery or transportation of
>>> goods and materials unless such use is:
>>>> (a) Incidental to your "business" of installing,
>>>> maintaining or repairing furnishings or
>>>> equipment; or
>>>> (b) For farming or ranching.

*Id.*

Tri-State filed a claim under the Policy for the total loss of the Lamborghini. SJ Mot. at 5. In response to the claim, California Casualty issued a reservation of rights, D.E. 26-5 at 82–114 (Ex. F); *see also* Facts ¶ 13; and conducted examinations under oath of the Montez Defendants and the Tri-State representative, D.E. 26-5 at 116–72 (Exs. G, H); *see also* Facts ¶ 14.

### 4. *State Court Action*

On April 26, 2023, Tri-State initiated an action in the Superior Court of New Jersey against the Montez Defendants, the Named Insureds, and Driver. Compl., *Tri-State Luxury Rentals, LLC v. Montez*, PAS-L-001104-23 (LCV20231369282). The complaint asserts a negligence claim against Driver ("Count I"), a negligent entrustment claim against Renter ("Count II"), and a claim for "punitive damages" against all defendants ("Count III"). *Id.* The Montez Defendants and the Named Insureds collectively moved to dismiss Counts II and III for failure to state a claim pursuant to N.J. Ct. R. 4:6-2(e). Mot. Dismiss, *Tri-State*, PAS-L-001104-23 (LCV20231835666). The court granted the motion to dismiss and dismissed Counts II and III with prejudice for failure to state a claim on August 4, 2023. Order, *Tri-State*, PAS-L-001104-23 (LCV20232254148).

### C. Procedural Background

On May 19, 2022, California Casualty filed this action against each Defendant (collectively, "Defendants"), seeking a judgment declaring that it "has no obligation to provide insurance coverage to any party for the damage to the Lamborghini." Compl. at 4–5.

#### 1. *California Casualty v. Montez Defendants*

The Montez Defendants answered on June 2, 2022. D.E. 3 ("Answer"). California Casualty now moves for summary judgment. SJ Mot. The Montez Defendants oppose and cross-move for summary judgment. Montez Mot. California Casualty replies. D.E. 27 ("Reply").

#### 2. *California Casualty v. Defendant Perez*

In addition to a declaration of no coverage, California Casualty also seeks "[a] finding that [Driver] is responsible to Tri State, or California Casualty if coverage is found, for the damage to the Lamborghini," Compl. at 4–5, because "the direct and proximate cause of the damage to [the Lamborghini]" was Driver's negligent and careless operation of it, *id.* ¶¶ 26–27.

On June 4, 2022, California Casualty attempted unsuccessfully to serve Driver at the address included on an unrelated complaint filed on June 23, 2020. D.E. 26-5 at 306–07 (Ex. S); *see also* D.E. 26-5 at 187–200 (Ex. J), at 193. California Casualty alleges that it has not otherwise been able to locate Driver,[2] and that its attempts to contact his assigned public defender have gone unanswered. SJ Mot. at 12–13; D.E. 26-5 at 304–05 (Ex. R).

California Casualty now moves for summary judgment in its declaratory action against Driver. SJ Mot.

---

[2] California Casualty alleges that "a review of the criminal docket revealed that a bench warrant issued for Christian Perez on November 19, 2021[,] for his failure to appear. The court docket lists Mr. Perez as a fugitive." SJ Mot. at 12–13.

### 3.  *California Casualty v. Defendant Tri-State*

California Casualty personally served the Complaint upon Tri-State and its owner on August 16, 2022.  D.E. 26-5 at 281–85 (Ex. P).  On October 24, 2022, California Casualty filed a request to enter default against Tri-State for its failure to answer or otherwise plead.  D.E. 26-5 at 286–303 (Ex. Q), at 291.  California Casualty sent a copy of this request to Tri-State via regular mail and certified mail.  *Id.* at 288–90.  According to California Casualty, Tri-State "refused to accept the delivery of the certified copy, but the regular mailed version did not come back as undeliverable."  *Id.*  California Casualty also sent a copy of the request to Jean Baptiste, Esq., who had, on behalf of Tri-State, appeared as counsel and communicated with California Casualty as part of California Casualty's investigations into Tri-State's claim filed under the Policy.  *Id.* at 287, 297; *see also* SJ Mot. at 5.  Tri-State has not replied.

California Casualty now moves for summary judgment and default judgment against Tri-State.  SJ Mot. at 8, 13; Default Mot. at 6, 8.  Tri-State has not opposed.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004).  A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  If the moving party adequately supports its motion by citing to specific materials in the record, *see* Fed. R. Civ. P. 56(c)(1)(A), then the burden shifts to the nonmoving party to "go beyond the pleadings" and designate specific facts on the record that demonstrate a genuine dispute for trial exists.  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted).  If material facts remain disputed but the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then the dispute is not genuine and summary judgment is appropriate.  *Id.* at 322.

In reviewing a motion for summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  In doing so, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

**B.  Default Judgment**

Under Fed. R. Civ. P. 55(b)(2), a court may enter default judgment against a "properly served defendant who fails to plead or otherwise defend an action." *La. Counseling & Fam. Servs., Inc. & Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  A district court has "the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods., Inc. v. China Nat'l Metals & Min. Imp. & Exp. Corp.*,

596 F. Supp. 2d 842, 847 (D.N.J. 2008).  In reviewing a motion for default judgment, a court accepts a complaint's well-pled factual allegations as true, but only for purposes of determining liability; the plaintiff must still prove damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Before entering default judgment, a court must consider three threshold requirements: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'"  *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683–84 (D.N.J. 2015) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, 2012 U.S. Dist. LEXIS 102652, at *5 (D.N.J. July 24, 2012)).  To determine whether entry of default is proper, a court must "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73–74 (3d Cir. 1987)); *see also Matos*, 133 F. Supp. 3d at 686.

## III.   ANALYSIS

### A.  Justiciability of Declaratory Judgment

As a threshold matter, the Court finds that, for the reasons set forth below, California Casualty's action presents an actual controversy that is ripe for adjudication.

The Declaratory Judgment Act provides:

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  Thus, a party seeking declaratory judgment must demonstrate the existence of an actual case or controversy.  *Id.*; *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993).  The case-or-controversy requirement is enforced "through several justiciability doctrines that 'cluster about Article III,'" such as the ripeness doctrine.  *Pittsburgh Mack Sales & Serv. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

The ripeness doctrine determines "whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."  *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003) (citation omitted).  To determine ripeness in the declaratory judgment context, a court analyzes (1) the "adversity of the interest of the parties," (2) the "conclusiveness of the judicial judgment," and (3) the "practical help, or utility, of that judgment."  *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).  "If all three of these requirements are met, the claim is ripe."  *Pittsburgh Mack*, 580 F.3d at 191.  *But see Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992) ("[T]he foregoing factors are not exhaustive of the principles courts have considered in evaluating ripeness challenges.").

### 1.   Adversity of Interests

According to the Third Circuit, "[p]arties' interests are adverse where harm will result if the declaratory judgment is not entered."  *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).  While a declaratory judgment action "cannot be based on a contingency, the party seeking declaratory relief need not wait until the harm has actually occurred to bring the action."  *Id.* (first citing *Step-Saver*, 912 F.2d 643, 647–48 (3d Cir. 1990); and then citing *Armstrong World*, 961 F.2d at 412)).  For example, a party may "seek declaratory judgment where the harm is

threatened in the future," if that party can "demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 (1974)).

The Montez Defendants argue that the coverage issue under the Policy's Liability Provision is not ripe "[a]s no party has filed a claim with [California Casualty] for 'bodily injury' or 'property damage' as set forth in [the Liability Provision] of the [P]olicy."  Montez Mot. at 8. However, in insurance coverage disputes, parties "may be adverse 'much in advance of the judgment [in an underlying lawsuit] since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement.'"  *Colony Ins. Co. v. Aspen Specialty Ins., Co.*, 2021 U.S. Dist. LEXIS 78263, at *9–10 (D.N.J. Apr. 22, 2021) (quoting *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981)); *see also Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.*, 257 F.2d 485, 490 (3d Cir. 1958) ("Courts have frequently found that in cases regarding liability insurance and a carrier's obligation to indemnify the insured, an actual controversy exists once the events underlying the insured's liability have occurred.").

Here, Tri-State has not only filed a suit against the Montez Defendants and Driver for their actions related to the Collision, but also a claim under the Policy for the total loss to the Lamborghini.  The Montez Defendants' dismissal from the state court action does not bear on the adversity of interests of California Casualty and the Montez Defendants as California Casualty may still be exposed to liability.  *See Maxum Indem. Co. v. N.J. Iron, Inc.*, 2010 U.S. Dist. LEXIS 123589, at *4 (D.N.J. Nov. 19, 2010) (citing *Occidental Life Ins. Co. of Cal. v. Nichols*, 216 F.2d 839, 842 (5th Cir. 1954) ("[A] real controversy still exists as long as the [appellant] has a chance

to reverse that judgment.")).   Accordingly, California Casualty and Defendants are sufficiently adverse.

### 2.  Conclusiveness of the Judgment

A "[c]ourt must determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994).   Questions that are predominantly legal "are generally amenable to a conclusive determination in a pre[-]enforcement context." *Id.*

Here, the coverage dispute is not based upon a hypothetical set of facts; rather, it is a pre-enforcement action that requires the Court to interpret the Policy.   "An insurance policy is a form of contract, . . . and the interpretation of contract language is a *question of law*." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605 (2012) (emphasis added) (citation omitted).   Moreover, "[c]onstruction and interpretation of written instruments (including contracts, insurance policies . . . ) is the principle function of a declaratory judgment proceeding." *Travelers Indem. Co. v. Dammann & Co.*, 2005 U.S. Dist. LEXIS 33458, at *3 (D.N.J. Dec. 12, 2005) (citation omitted).   As such, this factor also suggests that this coverage dispute is ripe.

### 3.  Utility

"[A] case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'" *Step-Saver*, 912 F.2d at 649 (quoting E. Borchard, *Declaratory Judgments* 57, 29 (1941)).   The utility of resolving a present dispute is not inherently undermined by the existence of an ongoing state court case. *Maxum Indem. Co.*, 2010 U.S. Dist. LEXIS 123589, at *4 (noting, however, that "federal district courts should decline to exercise jurisdiction over a claim for declaratory judgment when 'the controversy may be better settled in

state court.'" (quoting *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003)).  Rather,

when an insurer seeks a declaration of "no coverage," a court should consider the following:

> 1. A general policy of restraint when the same issues are pending in a state court;
> 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
> 3. Avoidance of duplicative litigation.

*State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000) (citation omitted).

Here, these considerations do not "counsel against a declaratory judgment . . . ."  *Maxum Indem. Co.*, 2010 U.S. Dist. LEXIS 123589, at *5.  First, California Casualty is not a party in the state court case Tri-State initiated.  Second, California Casualty is not defending the Montez Defendants in the state court case.  Finally, California Casualty's liability to the Montez Defendants is not before the state court.  *See id.*

Moreover, interpreting the Policy will determine the scope of California Casualty's coverage obligations, if any, that may be implicated either in the underlying state court case or claim filed under the Policy.  Thus, the Court finds that resolving the present matter would provide "practical help[] or utility."  *Step-Saver*, 912 F.2d at 647.

Accordingly, the Court finds that a "real, substantial controversy" exists between the parties that is ripe for adjudication.  *Peachlum*, 333 F.3d at 433.

### B.  California Casualty Has No Coverage Obligations to the Montez Defendants

California Casualty argues that it is entitled to a declaration of no coverage for the Montez Defendants under the Policy's Liability and Collision Provisions.  SJ Mot. at 13–24.  The Montez Defendants argue that California Casualty is obligated to provide coverage under the Collision Provision.  Montez Mot. at 8.  The Court agrees with California Casualty.

12

*1.   The Liability Provision Explicitly Excludes Coverage for Rented Property*

California Casualty argues that the Montez Defendants "are not entitled to Liability Coverage . . . for damage to the Lamborghini because it was a rental," and therefore subject to "the rental property exclusion" under the Policy's Liability Provision.  SJ Mot. at 13.  The Court agrees.

The Liability Provision provides, in pertinent part, coverage "for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident," but only to the extent the Policy provides.  Policy at 25.  Under this provision, "insured" is defined as

> 1. [The Named Insureds] or any "family member" for the ownership, maintenance or use of any auto or "trailer."
> 2. Any person using "your covered auto."
> 3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this [Liability Provision].
> 4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of [the Named Insureds] or any "family member" for whom coverage is afforded under this [Liability Provision]. This [Fourth] Provision applies only if the person or organization does not own or hire the auto or "trailer."

*Id.*  The "rental property exclusion" set forth by the Liability Provision's "exclusions" section stipulates that California Casualty "does not provide Liability Coverage for any 'insured' . . . for 'property damage' to property . . . rented to, used by, or in the case of that 'insured.'"  *Id.* at 26 (emphasis added) (cleaned up).  This exclusionary language is clear and unambiguous, and therefore precludes liability insurance coverage for the Montez Defendants.  *See Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010) ("Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997))).

Here, the Montez Defendants are both "insureds" as they both reside with their parents—the Named Insureds, Policy at 25; *see also* Facts ¶¶ 5–6; and the Lamborghini was "rented to" Renter, *see* Rental Agreement; *see also* Facts ¶¶ 7–8, and "used by" Passenger, *see Indem. Ins. Co. of N. Am. v. Metro. Cas. Ins. Co. of N.Y.*, 33 N.J. 507, 513 (1960) ("An automobile is being used, for example, by one riding in it although another is driving.").  Thus, California Casualty is not obligated to provide coverage to the Montez Defendants for the property damage to the rented Lamborghini under the Liability Provision.

Accordingly, California Casualty is entitled to a declaration of no coverage under the Liability Provision.[3]

2. *The Collision Provision Explicitly Excludes Coverage for the Lamborghini*

California Casualty argues that the Lamborghini is not afforded coverage under the Policy's Collision Provision.  SJ Mot. at 16, 20.  The Court agrees.

The Collision Provision provides, in pertinent part, that California Casualty "will pay for direct and accidental loss to 'your covered auto' or any 'non owned auto,'" and that "[i]f there is a loss to a 'non-owned auto,' [California Casualty] will provide the broadest coverage applicable to any 'your covered auto' shown in the Declarations."[4]  Policy at 31.  This provision excludes coverage for "[l]oss to any 'non-owned auto' when used by [the Named Insureds] or any 'family member' without a reasonable belief that [the Named Insureds] or that 'family member' are entitled to do so."  *Id.* at 32.  The Court does not decide whether the Lamborghini is a "non-owned"

---

[3] In opposition, the Montez Defendants merely assert that this issue "is not ripe and not before the Court."  Montez Mot. at 8.  They do not, however, otherwise challenge California Casualty's coverage obligations under the Liability Provision.

[4] Neither California Casualty nor the Montez Defendants argue that the Lamborghini is a "your covered auto."  Nevertheless, the record clearly establishes that it is not; it is not "shown in the Declarations," it does not constitute a "newly acquired auto," and is not a "trailer" owned by the Named Insureds.  *See* Policy at 9, 24.

auto,"[5] but finds that if it is, coverage under the Collision Provision is nonetheless precluded pursuant to this exclusion ("Exclusion").

The dispositive inquiry is whether Renter or Passenger,[6] not Driver, had a reasonable belief that she—Renter or Passenger—was entitled to use the Lamborghini in the manner in which she did. The Policy does not define the terms "entitled" or "reasonable belief." Thus, the Court interprets these terms "according to [their] plain and ordinary meaning," and resolves any ambiguity in favor of the insured. *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992) (citing *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 537 (1990)); *see also Flomerfelt*, 202 N.J. at 441 ("An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." (first citing *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960); and then citing *Scarfi v. Aetna Cas. & Sur. Co.*, 233 N.J. Super. 509, 513–14 (App. Div. 1989))). That said, "courts cannot 'write for the insured a better policy of insurance than the one purchased.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Walker Rogge, Inc. v. Chelsea Title & Gar. Co.*, 116 N.J. 517, 529 (1989)); *see also Kampf*, 33 N.J. at 43 ("When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not make a better contract for either of the parties.").

Similarly, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (citing *Princeton Ins. Co.*, 151 N.J. at 95). It has been observed that "[i]n general, insurance policy

---

[5] California Casualty first argues that the Lamborghini is not a "non-owned auto," as defined in the Policy, but that even if it were, coverage is "nevertheless barred" because neither Driver nor Passenger could have "reasonably believe[d] they were entitled to use the Lamborghini with . . . Perez as the operator." SJ Mot. at 16, 20.

[6] As already established, both of the Montez Defendants are "family members" as they reside with their parents, the Named Insureds.

exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Id.* at 442 (quoting *Princeton Ins. Co.*, 151 N.J. at 95). Consequently, "exclusions are ordinarily strictly construed against the insurer." *Id.* (citing *Aetna Ins. Co. v. Weiss*, 174 N.J. Super. 292, 296 (App. Div. 1980) ("[I]f there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." (citing *Cobra Prods., Inc. v. Fed. Ins. Co.*, 317 N.J. Super. 392, 400–01 (App. Div. 1998)))). "Nonetheless, courts must be careful not to disregard the 'clear import and intent' of a policy's exclusion." *Flomerfelt*, 202 N.J. at 442 (citing *Westchester Fire Ins. Co. v. Cont'l Ins. Cos.*, 126 N.J. Super. 29, 41 (App. Div. 1973), *aff'd o.b.*, 65 N.J. 152 (1974)).

As California Casualty notes, New Jersey has "well developed case law" construing entitlement in an exclusionary clause context, but only in the broader context of liability insurance, not collision insurance. SJ Mot. at 21 (first citing *Rutgers Cas. Ins. Co. v. Collins*, 158 N.J. 542 (1999); and then citing *French v. Hernandez*, 184 N.J. 144 (2005)). This distinction is significant because the policy concern implicated in the liability insurance context, which gave way to the "initial permission rule,"[7] is not implicated in the non-compulsory collision insurance context here.

---

[7] The "initial permission rule" provides that

> if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy.

*Jaquez v. Nat'l Cont'l Ins. Co.*, 178 N.J. 88, 93 (quoting *Matits v. Nationwide Mut. Ins. Co.*, 33 N.J. 488, 496–97 (1960)); *see also Universal Underwriters Group v. Heibel*, 386 N.J. Super. 307, 317–18 (App. Div. 2006) (explaining that liability insurance "protects the insured against damages which he may be liable to pay to third parties as a result of the insured's conduct," and is therefore compulsory under New Jersey's omnibus liability coverage statute, N.J.S.A. § 39:6B-1(a), as to protect innocent third parties). "The breadth of the rule is designed to assure that all persons wrongfully injured have financially responsible persons to look to for damages because a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured." *Jaquez*, 178 N.J. at 94 (quoting *Verriest v. INA Underwriters Ins. Co.*, 142

*See Huggins v. Aquilar*, 246 N.J. 75, 90 ("Lawful exceptions to discretionary insurance coverage do not raise the same concerns as efforts to evade minimum insurance requirements set by law."); *Heibel*, 386 N.J. Super. at 319 ("[T]here simply is no public benefit implicated because no innocent third party was injured in the accident. Accordingly, . . . there is no statutory requirement compelling a[n] . . . insurer to [provide coverage for] a permissive user['s] . . . damages to the [insured's] . . . motor vehicle."). The Court therefore declines to extend the initial permission rule to the Exclusion implicated here.

Instead, the Court—interpreting the terms according to the plain and ordinary meaning most favorable to the insured—holds that coverage is precluded pursuant to the Exclusion "when a person is using a vehicle without a reasonable belief that he or she had permission of the owner or apparent owner to do so." *Farm & City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995) ("'Entitled' could mean a legal right or authority to drive under the applicable law. . . . Another equally reasonable interpretation is 'consent' or 'permission' from the vehicle owner or apparent owner. Finally, 'entitled' could require both consent and legal consent."). Thus, "whether an insured had a reasonable belief he was entitled to use a . . . rented vehicle in a particular way depends upon the scope of the permission given by the owner." *Nationwide Agri-Bus. Ins. Co. v. Goodwin*, 782 N.W.2d 465, 471 (Iowa 2010); *see also Safeco Ins. Co. of Am. v. Smith*, 318 S.W.3d 196, 201 n.3 (W.D. Mo. 2010) ("When considering entitlement to operate a vehicle, permission is merely one element to be considered, and other factors, like the driver's age and possession of a driver's license, must be considered."); *Hawkeye-Sec. Ins. Co. v. Bunch*, 643 F.3d 646, 652 (8th Cir. 2011) ("Whether a person has a reasonable belief that he can use a vehicle is determined by

---

N.J. 401, 413–14 (1995)); *see also Odolecki v. Hartford Accident & Indem. Co.*, 55 N.J. 542, 546 (1970) (explaining that the initial permission rule was implemented to "comport with New Jersey's legislative policy of assuring an available fund for the innocent victims of automobile accidents").

several factors, including whether he had express permission, whether he exceeded the scope of that permission, whether the law prohibited the use, whether he owns the car, and the relationship between the driver and the insured."); *Std. Fire Ins. Co. v. Empire Fire & Marine Ins. Co.*, 234 S.W.3d 377, 379 (Ky. Ct. App. 2007) ("[M]ost jurisdictions that have construed such 'reasonable belief' clauses have held that while reasonable belief and permission are not the same thing, actual or apparent permission is a crucial factor in determining whether a reasonable belief exists."); *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712 (1996) ("The exclusion clause at issue . . . differs from the traditional 'omnibus' clause . . . . The new clause is couched in terms of entitlement rather than permission . . . ."). Accordingly, since Tri-State owned the Lamborghini and rented it to Renter, the Court rejects the Montez Defendants' argument that the Rental Agreement "is of no moment in determining whether the [P]olicy requires [California Casualty] to extend collision coverage to both [or either of the Montez Defendants]." Montez Mot. at 9.

Here, the Rental Agreement explicitly restricts the operation and use of the Lamborghini to Renter, the only authorized driver. Rental Agreement at 39–40. Thus, Renter was not entitled to permit Driver and Passenger to operate and use the Lamborghini, nor could she reasonably believe otherwise given the scope of Tri-State's permission as expressly delineated in the Rental Agreement. In fact, neither Driver nor Passenger could have even been included as authorized drivers on the Rental Agreement; Driver is unlicensed and therefore barred by both New Jersey law *and* the Rental Agreement's terms, and Passenger was underage and therefore barred by the Rental Agreement's terms. As such, neither Renter nor Passenger could have reasonably believed that she was entitled to use the Lamborghini in the manner that she did.

Finally, the Court is unpersuaded by the Montez Defendants' argument that coverage should nonetheless be afforded to effectuate Renter's reasonable expectations that California

Casualty "would afford insurance coverage during the rental period and not seek to escape its obligations."  Montez Mot. at 10.  Under the reasonable expectations doctrine, "an objectively reasonable interpretation of the average policyholder is accepted so far as the language of the insurance contract in question will permit."  *Di Orio v. N.J. Mfrs. Ins. Co.*, 79 N.J. 257, 269 (1979) (citations omitted).  However, the Montez Defendants have not asserted an alternative interpretation of the Exclusion, let alone one that is more favorable to them than what the Court holds here—that is that the Exclusion bars "coverage . . . when a person is using a vehicle without a reasonable belief that he or she had permission of the owner or apparent owner to do so." *Gilmore*, 539 N.W. 2d at 157.[8]

Accordingly, California Casualty is entitled to a declaration of no coverage under the Collision Provision because neither of the Montez Defendants could have reasonably believed she was entitled to use the Lamborghini in the manner in which she did.

### C.  California Casualty Has No Coverage Obligations to Driver Because He Is Not an Insured

California Casualty argues that Driver is not entitled to coverage under the Liability Provision because Driver is not an insured.  SJ. Mot. at 9.  The Court agrees.

The Liability Provision explains that California Casualty will provide coverage "for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident."  Policy at 25.  The Policy defines "insured" as

> 1. [The named insured(s)] or any "family member" for the ownership, maintenance or use of any auto or "trailer."
> 2. Any person using "your covered auto."
> 3. For "your covered auto," any person or organization but only with respect to legal responsibility for the acts or omissions of a person for whom coverage is afforded under this Part.

---

[8] The Montez Defendants merely allege that the exclusion does not apply because the Montez Defendants "were 'entitled' to use the [Lamborghini], and held a 'reasonable belief' that they were covered by insurance at the time of the accident."  Montez Mot. at 12.

> 4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision . . . applies only if the person or organization does not own or hire the auto or "trailer."

*Id.* Driver does not fall into any of these categories.

First, he is not a named insured or a family member; he is Passenger's boyfriend. Moreover, the Lamborghini is not a "covered auto" because it is not included in the Policy's declarations, a newly acquired auto, a trailer, or "used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its breakdown, repair, servicing, loss, or destruction." *Id.* at 24.  Lastly, Driver was not acting as an agent or in any other capacity such that the Named Insureds or the Montez Defendants could be exposed to vicarious liability.  *See Badet v. State Farm Mut. Auto. Ins. Co.*, 1998 U.S. Dist. LEXIS 1967, at *8–9 (E.D. Pa. Feb. 23, 1998) ("Such provisions are intended to cover employers for the actions of an insured employee involved in an automobile accident during the court and scope of his employment or others who may be vicariously liable by operation of law for the negligence of an insured driver."); *see also Scott v. Salerno*, 297 N.J. Super. 437, 448 (App. Div. 1997) ("[Employer] was responsible for the acts of [valet], and, therefore, [employer] was insured under the [policy] covering the [vehicle owner's] automobile.").

Accordingly, California Casualty is entitled to a declaration of no coverage as to Driver.

### D. California Casualty Is Entitled to Default Judgment and a Declaration of No Coverage as to Tri-State

#### 1. Default Judgment is Appropriate

California Casualty argues that default judgment against Tri-State for its "failure to answer or otherwise plead" is appropriate pursuant to Federal Rule of Civil Procedure 55(b).  Default Mot. at 6.  The Court agrees.

As a preliminary matter, the threshold requirements to enter default judgment have been met. First, the Court is properly sitting in diversity because California Casualty and Tri-State are domiciled in different states and the amount in controversy is greater than $75,000.[9] *See* 28 U.S.C. § 1332. The Court has personal jurisdiction over Tri-State because it is a New Jersey limited liability company, Compl. ¶ 5, and the underlying event—the Collision—arose out of its principal operations in the state. *See, e.g.*, *Hannah v. Johnson & Johnson, Inc.*, 2020 U.S. Dist. LEXIS 113284, at *86–87 (D.N.J. June 29, 2020) (citations omitted) ("[F]or the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of incorporation."). Moreover, California Casualty personally served the Complaint on Tri-State and its owner. D.E. 26-5 at 281–85 (Ex. P). Finally, and for the reasons previously discussed, *see supra* Section III.A., California Casualty's action seeking a declaration of no coverage against Tri-State, Compl. ¶ 21, presents a cognizable controversy that is ripe for adjudication.

Furthermore, the Court finds that an entry of default judgment is otherwise "proper." *See, e.g.*, *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683–84 (D.N.J. 2015). First, Tri-State has failed to answer or otherwise plead and therefore has not established a meritorious defense. *See* D.E. 26-5 at 286–303 (Ex. Q), at 291; *see also Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 Fed. App'x 136, 140 (3d Cir. 2017) ("[A] defendant has established a meritorious defense when its 'allegations, if establish at trial, would constitute a complete defense.'" (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984))). Additionally, Tri-State's failure to answer or otherwise plead has prejudiced California Casualty by preventing it from properly

---

[9] California Casualty is domiciled in California and Tri-State is a New Jersey corporation. Compl. ¶¶ 1, 5. The amount in controversy (i.e., the loss to the Lamborghini) is around $121,000. D.E. 26-5 at 75–81 (Ex. E), at 78.

resolving the claim filed under the Policy and exposing it to a threat of future harm that may arise from any present or future litigation and claims related to the Collision.  *Kinsley Tech. Co. v. Exquisite Buys*, 2023 U.S. Dist. LEXIS 142797, at *9 (D.N.J. Aug. 15, 2023) ("Defendants' failure to appear or otherwise respond has prejudiced [p]laintiff by preventing it from prosecuting its case and seeking relief.").  Lastly, "[a]bsent any evidence to the contrary, [Tri-State's] 'failure to answer evinces [its] culpability in [the] default.'"  *Hayward Ind. v. Saltwater Pool Supplies*, 2021 U.S. Dist. LEXIS 92209, at *11 (D.N.J. May 14, 2021) (quoting *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, 2011 U.S. Dist. LEXIS 115142, at *4 (D.N.J. Oct. 5, 2011)).  Specifically, Tri-State's failure to answer or otherwise plead suggests an agreement with California Casualty's contention that Tri-State is not an insured under the Policy.

Accordingly, having found that the threshold requirements have been met and an entry of default judgment is otherwise proper, the Court will grant California Casualty's motion for default judgment.

### 2.  *Declaratory Judgment is Appropriate Because Tri-State Is Not an Insured*

Instead of damages, California Casualty seeks a declaration that it has no coverage obligations to Tri-State because Tri-State is not an insured.  The Court finds that Tri-State is entitled to a declaration of no coverage obligations to Tri-State and will enter judgment accordingly.

Tri-State is not entitled to coverage under the Liability Provision because it does not fall into any of the four categories of an insured, as defined by the Policy, for the same reasons that Driver did not, *see* Policy at 25; Tri-State is neither a named insured nor a family member, the Lamborghini is not a "covered auto," and, even if liability could be imposed upon Tri-State for the

property damage resulting from the Collision, such liability could not vicariously be imposed on either the Named Insureds or the Montez Defendants.

Accordingly, California Casualty is entitled to a declaration of no coverage as to Tri-State.

## IV.    CONCLUSION

For the reasons set forth above, California Casualty's motion for summary judgment against all Defendants and motion for default judgment against Tri-State will be **GRANTED** and the Montez Defendants' cross-motion for summary judgment will be **DENIED**.  An appropriate Order and Judgment accompany this Opinion.


Dated: January 17, 2024

Evelyn Padin, U.S.D.J.